| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| ZACARIAS RODRIGUES and MORSMAN REALTY CORP., <br> Plaintiffs, <br> – against – <br> THE INCORPORATED VILLAGE OF MINEOLA, *et al.*, <br> Defendants. | **MEMORANDUM & ORDER** <br><br> 16-cv-1275 (ERK) |

KORMAN, *J.*:

Plaintiffs Zacarias Rodrigues and Morsman Realty Corporation ("Morsman") brought this action against the Incorporated Village of Mineola ("Village") and Daniel B. Whalen, the Village's Superintendent of the Department of Buildings, pursuant to 42 U.S.C. § 1983, seeking redress for alleged selective enforcement of the Village's Municipal Code ("Code") and parking rules. Am. Compl. ¶¶ 1, 75, ECF No. 25. On June 16, 2017, Judge Bianco dismissed all of plaintiffs' claims except for their claims against Whalen in his personal capacity and against the Village based on two summonses issued in 2014 for violations of the Code, and their claim against the Village based on its issuance of parking citations. Order 1 n.1, 12, ECF No. 39. The defendants now move for summary judgment on those remaining claims pursuant to Fed. R. Civ. P. 56. Defs.' Mot. Summ. J., ECF No. 58.

**BACKGROUND**

Rodrigues is a Portuguese resident of Nassau County, NY, with citizenship only in Portugal. Defs.' 56.1 Stmt. ¶¶ 1–2, ECF No. 59. Since 1995, he has been the sole owner and shareholder of Morsman, a corporation that rents space to a variety of commercial tenants at 75 Windsor Avenue, Mineola, New York (the "Property"). *Id.* ¶¶ 6, 18, 25. The Property is in the Village's M-Zoning District, where certain light manufacturing and industrial uses are permitted, but the operation of concrete ready-mix plants and automotive repair shops is prohibited. *Id.* ¶¶ 19–20, 26, 30. Since 2000, plaintiffs have had a Special Use Permit granted by the Village Board of Trustees allowing them to use up to 31% of their overall lot for auto repairs. *Id.* ¶¶ 26–28.

Starting in 2003, Rodrigues ran a concrete ready-mix plant at the Property, which violated the Code. *Id.* ¶¶ 29–30. After the Village charged Rodrigues with the violation, Rodrigues unsuccessfully pursued a variance to legalize his plant, and disobeyed the Village's order to shut it down. *Id.* ¶¶ 33, 41. The Village ultimately sued Rodrigues, which resulted in a So-Ordered Stipulation of Settlement executed in 2007. *Id.* ¶¶ 41–43. Pursuant to the settlement, Rodrigues was enjoined from operating a concrete ready-mix plant on the Property and from discharging sediment from cement trucks into the Village's sanitary sewer system or storm water drainage system, but was allowed to store trucks, machinery, equipment and materials on the Property as long as they were not used to produce concrete. *Id.* ¶¶ 45–48. The settlement also authorized the Village to inspect the property to ensure compliance with the settlement's terms. *Id.* ¶ 49.

On or around September 28, 2006, plaintiffs were issued a summons accusing them of "permit[ting] or allow[ing] for the accumulation of filth, dirt, concrete dust and stones upon a

public place" in violation of the Code. Am. Compl. ¶ 21; Defs.' Answer to Am. Comp. ¶ 20, ECF No. 42. Judge Bianco dismissed plaintiffs' claim based on that particular summons as time-barred. Order 1 & n.1.

Plaintiffs' remaining claims in the present litigation are based on two summonses and a number of parking tickets that the Village issued to them between 2013 and 2015, as described below. Throughout that period, defendant Whalen was the Superintendent of the Village's Buildings Department, but neither he nor his department were involved in parking enforcement or otherwise handled parking matters. Defs.' 56.1 Stmt. ¶¶ 11, 129, 132. Plaintiffs contend that, by taking these actions against them, the defendants "subject[ed] [plaintiffs] to discriminatory and disparate treatment on the basis of [Rodrigues's] national origin . . . with respect to the selective enforcement of laws, regulations, and municipal codes." Am. Comp. ¶ 75.

### A. The July 2014 Summons

On July 22, 2014, the Village received a complaint from one of Morsman's tenants, GTS, reporting that one of Morsman's other tenants, Crown Waste Corp., had been dumping garbage and cleaning garbage trucks on the property it rented, causing sewage to run into public streets, an increase in insects and rodents in the area, and an overwhelming smell that "ma[de] it difficult to conduct a normal business day." Defs.' 56.1 Stmt. ¶ 55; Defs.'Aff. Supp. Mot. Summ. J. Ex. G, ECF No. 60-7. Shortly thereafter, Thomas Murphy, a building inspector for the Village, issued notices of violation and summonses to both Crown Waste Corp. and plaintiffs, charging them with depositing material other than storm water into the Village's storm sewer system, in violation of the Code. Defs.' 56.1 Stmt. ¶¶ 56–58; Ex. H, at 2, ECF No. 60-8; Ex. I, at 2–3, ECF

No. 60-9. The charge against plaintiffs was later dismissed, without any fine imposed on them, and then Crown Waste Corp. pled guilty and paid a $350 fine. Defs.' 56.1 Stmt. ¶¶ 59, 60.

### B. The December 2014 Summons

On December 1, 2014, Murphy issued summonses to both Crown Waste Corp. and plaintiffs charging them with operating a "garbage/waste hauling company," which was not permitted in their zoning district, and thus a violation of the Code. *Id.* ¶¶ 62–63; Ex. K, ECF No. 60-11. Crown Waste Corp. pled guilty on June 29, 2015, and paid a $1,000 fine. Defs.' 56.1 Stmt. ¶ 64. The summons against plaintiffs was thereafter dismissed without any fine imposed on them. *Id.* ¶¶ 65–67.

### C. The Parking Tickets

Between 2013 and 2015, at least four vehicles have been registered in either Rodrigues's or Morsman's name. *Id.* ¶¶ 106–107. During that period, three of those vehicles received a total of approximately twenty-six tickets from the Village: a pickup truck used mainly for plaintiffs' business and driven predominantly by one of plaintiffs' drivers (not Rodrigues) was ticketed around twelve times for double parking and parking a commercial vehicle on a Village street overnight, *id.* ¶¶ 108–110; another pickup truck shared by Rodrigues and his wife was ticketed around six times for those same offenses, *id.* ¶¶ 113–14; and a Ford Mustang with commercial plates was ticketed around eight times for violating parking rules on signs or markers, parking a commercial vehicle on a Village street overnight, and lacking a registration, *id.* ¶¶ 117–18.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56, a "party moving for summary judgment bears the burden of show[ing] that there is no genuine dispute as to any material fact and [that] the movant is entitled

4

to judgment as a matter of law." *In re DeRogatis*, 904 F.3d 174, 186 (2d Cir. 2018) (alteration in original) (quotation marks omitted). Where, as here, the defendants move for summary judgment on a claim for which the plaintiffs would bear the burden of proof at trial, the defendants may satisfy their burden of production by negating an essential element of the plaintiffs' claim, "whether by submitting undisputed evidence to that effect or by demonstrating the insufficiency of the [plaintiffs'] own evidence." *Id.* at 187 (citing *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017)).

"Although all inferences must be drawn in favor of the nonmoving party, mere speculation and conjecture are insufficient to preclude the granting of the motion." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). To survive the motion, plaintiffs therefore "must offer some hard evidence," and the "mere existence of a scintilla of evidence [supporting their] position will be insufficient; there must be evidence on which the jury could *reasonably* find for [them]." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (emphasis in original).

## DISCUSSION

Defendants argue that they are entitled to summary judgment on all of plaintiffs' remaining claims because (i) plaintiffs' selective enforcement claims fail as a matter of law, (ii) Whalen is entitled to qualified immunity, and (iii) the evidence cannot satisfy the requirements for imposing municipal liability on the Village. As set forth below, plaintiffs' selective

enforcement claims fail as a matter of law, and, accordingly, it is not necessary to reach the issues of qualified immunity and municipal liability.

**I.     Plaintiffs' Selective Enforcement Claims Fail As A Matter Of Law**

Plaintiffs' 42 U.S.C. § 1983 claims are based on a selective enforcement theory. Am. Compl. ¶ 72. To prevail on that theory, plaintiffs would need to establish both that (i) they were "treated differently from other similarly situated businesses;" and (ii) "such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007). They cannot establish either.

*A.     Insufficient Evidence of Different Treatment*

Defendants argue that plaintiffs lack legally sufficient evidence that plaintiffs were treated differently from similarly situated businesses, because the other businesses that plaintiffs have compared with their own business, Morsman, are not similarly situated. Defendants further argue that, even if they were similarly situated, there is no evidence that the defendants treated Morsman and the comparator businesses differently.

1.     <u>Similarly Situated</u>

To be "similarly situated" to Morsman, a business need not be "identical" to Morsman, but must be "similarly situated in all material respects" to Morsman, *Hu v. City of New York*, 927 F.3d 81, 96 (2d Cir. 2019), so as to provide an "objectively identifiable basis for comparability," *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). "Generally, whether two entities are similarly situated is a factual issue that should be submitted to the jury. But this rule is not absolute and a court can properly grant summary judgment where it is clear that no reasonable

jury could find [that they are] similarly situated . . . ." *Cine SK8, Inc.,* 507 F.3d at 790–91 (citation and quotation marks omitted).

Plaintiffs have put forth as similarly situated businesses two comparators: D&A Sand and Gravel, Inc. ("D&A") and Gullwing Motors, Inc. ("Gillwing"). Defs.' 56.1 Stmt. ¶¶ 87, 100. D&A is a company that produces and stores concrete and materials required to make concrete. *Id.* ¶ 89. Gullwing is a vehicle repair business. *Id.* ¶104; Ex. Z, at 32, ECF No. 60-26. Defendants argue that D&A and Gullwing are not similarly situated comparators for several reasons, including: (i) Morsman has several tenants, while D&A and Gullwing have none (ii) Morsman is generally not engaged in similar activities as D&A and Gullwing (iii) neither D&A nor Gullwing have ever had garbage trucks cleaned or stored on their property; (iv) D&A has permission to produce concrete, while Morsman does not; (v) Morsman has permission for open-air storage of trucks and equipment, while D&A does not; (vi) there is no evidence D&A or Gullwing are subject to any special arrangement with the Village like Morsman's settlement related to concrete production or its Special Use Permit related to automotive repair. Defs.' Br. 6–7, ECF No. 61; Defs.' Reply 2–3, ECF No. 66.

Defendants raise serious doubt as to whether D&A and Gullwing are sufficiently similarly situated comparators for purposes of plaintiffs' claim. *C.f. Cine SK8, Inc.*, 507 F.3d at 791. Nevertheless, it is unclear whether or not they are similarly situated as a matter of law. D&A and Gullwing are among Morsman's "neighboring properties," Defs.' Br. 7, and, like Morsman, they are sites of tightly regulated industrial or mechanical activity. Defs.' 56.1 Stmt. ¶¶ 62, 89, 96, 104. Thus, it may be possible that a reasonable jury could find D&A and Gullwing

to provide an adequate "basis for comparability," *Graham*, 230 F.3d at 40, against which to assess the Village's enforcement of its laws against Morsman.

2. Treated Differently

Defendants argue that plaintiffs "cannot show" the Village treated them differently from their comparators. Defs.' Br. 10–12. To prevail at trial, plaintiffs would need to establish that the Village "consciously applied a different standard of enforcement" to them than it did to D&A and/or Gullwing. *LaTrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999); *Lamothe v. Town of Oyster Bay*, 2012 WL 6720781, at *8 (E.D.N.Y. Dec. 27, 2012). A showing of the Village's "mere failure to prosecute" others would not suffice, because, "ordinarily," a selective enforcement claim requires "a showing that the [government] *knew* of other violations, but declined to prosecute them." *LaTrieste*, 188 F.3d at 70 (emphasis added).

It is undisputed that, in 2012, within two years of when the Village issued the relevant summonses to plaintiffs, the Village also issued summonses for multiple Code violations to each of D&A and Gullwing, including one to D&A for unlawfully washing a cement truck in a public street (similar to plaintiffs' July 2014 summons) and one to Gullwing for operating a motor vehicle repair shop without a special use approval (similar to plaintiffs' December 2014 summons). Defs.' 56.1 Stmt. ¶¶ 96, 104. It is also undisputed that, since 2000, the Village has issued several tickets to each of D&A and Gullwing, *id.* ¶¶ 121, 124, including tickets like those received by plaintiffs for double parking, parking a commercial vehicle on a Village street

8

overnight, violating parking rules on signs or markers, and registration defects. *Compare id. with id.* ¶¶ 108–110, 113–114, 117–118.

Plaintiffs argue that there is a genuine issue as to whether the Village treated plaintiffs differently than their comparators because "[w]hile it is true the Defendant did fine [D&A and Gullwing], by comparison, plaintiff was fined a much higher amount." Opp'n Br. 5, ECF No. 64. But plaintiffs' assertion that they were fined "a much higher amount" lacks any citation and is not supported by any evidence. Though I need not consider it, *see* Fed. R. Civ. P. 56(c), (e), the record does include documents showing higher fines against plaintiffs than their comparators based on tickets for the same offenses, such as double-parking—but all of plaintiffs' tickets, and none of the comparators' tickets, were "[p]ast due." *Compare* Ex. V, ECF No. 60-22, *and* Ex. W, ECF No. 60-23, *with* Ex. X, ECF No. 60-24, *and* Ex. Y, ECF No. 60-25. There is no evidence of the *original* fines associated with plaintiffs' tickets, and the tickets' "Current Fine[s]" evidently increased with their numbers of "[p]ast due days." *See, e.g.*, Ex. V, at 2 (double-parking tickets that were 106 days and 274 days past due had current fines of $100 and $300, respectively). Since the evident penalty for lateness provides an obvious explanation for why plaintiffs' fines were higher, that is not "evidence on which the jury could *reasonably* find for [plaintiffs]." *Jeffreys*, 426 F.3d at 554.

Plaintiffs also argue that there is a genuine issue as to whether the Village treated plaintiffs differently because "although the Village issued a summons to plaintiffs for 'allowing for the accumulation of filth dirt, concrete dust and stones upon a public place,' it did not do so for their neighbors even though Rodrigues 'observed [them] spill concrete production material onto public streets.'" Opp'n Br. 5–6 (quoting Am. Compl. ¶¶ 20, 22). But this allegation is also

9

completely unsupported by evidence. Plaintiffs' brief merely quotes—without citing—their Amended Complaint, which is not verified. Because the Amended Complaint is not verified, "it is not admissible evidence for the purposes of a motion for summary judgment." *Babino v. Gesualdi*, 278 F. Supp. 3d 562, 573 (E.D.N.Y. 2017), *aff'd*, 744 F. App'x 30 (2d Cir. 2018); *see also Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). Moreover, even if it were supported by evidence, the allegation would still be insufficient, because it claims a "mere failure to prosecute" the neighbors' violations without providing any reason to believe the Village *knew* about those violations. *See LaTrieste*, 188 F.3d at 70.

    B.    *Insufficient Evidence of Impermissible Considerations*

Defendants further argue that there is "no evidence" that plaintiffs' national origin motivated any of the defendants' actions. Defs.' Br. 12–14. "Although the issue of whether an action was motivated by [impermissible considerations] generally is a question of fact properly left to the jury, [I] will uphold a grant of summary judgment where the nonmoving party adduces nothing more than speculation to support its claims." *Harlen Assocs.*, 273 F.3d at 501-03; *see, e.g.*, *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 17 (2d Cir. 1999).

Here, there is no evidence that defendants even *knew* Rodrigues's national origin at the relevant time, let alone that it affected how they treated him. Ex. Z, at 14. Defendants stated in their Rule 56.1 Statement that "Whalen did not know Rodrigues was Portuguese until Rodrigues' deposition on October 18, 2018," duly citing Whalen's deposition testimony to that effect. Defs.' 56.1 Stmt. ¶ 13 (citing Ex. Z, at 14). Plaintiffs' response, devoid of any citation, was: "admit as that is what the testimony says, disputed as to the veracity of that statement." Pls.' Resp. 56.1 Stmt. ¶ 13. Because the response fails to specifically controvert defendants' statement with some

10

"citation to evidence," the Local Rules dictate that the statement "be deemed to be admitted." Local Civ. R. 56.1(c)–(d).

Moreover, "[m]erely to assert that a witness may be lying, without any evidence to contradict the [witness's] testimony cannot defeat a motion for summary judgment." *Fernandez v. China Ocean Shipping, (Grp.) Co.*, 312 F. Supp. 2d 369, 378 (E.D.N.Y. 2003) (alterations omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986); *Modern Home Inst., Inc. v. Hartford Acc. & Indem. Co.*, 513 F.2d 102, 110 (2d Cir. 1975). Plaintiffs essentially concede that they have no evidence to contradict Whalen's testimony that he did not learn Rodriguez was Portuguese until 2018, well after the selective enforcement allegedly occurred. Pls.' Resp. 56.1 Stmt. ¶ 13; Opp'n Br. 6. The absence of such evidence is clearly fatal to plaintiffs' claim against Whalen in his personal capacity.

It is also fatal to plaintiffs' claims against the Village, because plaintiffs' only theory of the Village's liability depends on Whalen himself selectively enforcing the Code against plaintiffs based on Rodrigues's national origin. *See* Am. Compl. ¶ 70 ("[T]he Village of Mineola is liable for the actions of DANIEL WHALEN under *Monell*."); Opp'n Br. 7-8 ("Whelan [sic.] is a final policymaker and as such his actions are binding on the town for Monell Purposes."). And, in any event, there is no evidence that *anyone* associated with the Village knew Rodrigues's national origin or treated him different based on any impermissible consideration. For example, plaintiffs admit Rodrigues had "no conflict" with Murphy, the building inspector. Pls.' Resp. Defs.' 56.1 Stmt. ¶ 69; Ex. B, at 235, ECF No. 60-2. They also admit that no Village employee ever said anything to Rodrigues that was negative or disparaging about Portuguese people or the fact that he is Portuguese. Pls.' Resp. Defs.' 56.1 Stmt. ¶ 82; Ex. B, at 109. Under these

11

circumstances, even passing over the issue of whether the standard for imposing municipal liability is satisfied under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), plaintiffs' claims against the Village fail.

## CONCLUSION

In sum, defendants have demonstrated the insufficiency of evidence supporting two essential elements of plaintiffs' remaining claims: (i) that defendants treated plaintiffs differently from similarly situated others; and (ii) that such treatment was based on impermissible considerations. Thus, defendants' motion for summary judgment in this action in its entirety is hereby GRANTED.

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York
September 26, 2019

Edward R. Korman
United States District Judge